Mr. Schoenfeld. Good morning, Your Honor, and may it please the Court, can you hear me okay? Yes. Okay, thank you. The question before the Court is whether Mr. Farhan's motion for certificate appealability presents questions that are reasonably debatable. The questions presented here plainly are. We know that because the government urges this Court to rule on grounds pressed but not adopted by the District Court, and because the government fails to cite a single case that clearly controls the outcome of Mr. Farhan's habeas petition. The first question is whether trial counsel's failure to apprise his client, whom he knows to be a naturalized citizen, of the possible adverse immigration consequences of a guilty plea is objectively unreasonable. It is. At the very least, reasonable judges could debate the point. The Supreme Court in Padilla made clear that as of the time of Mr. Farhan's guilty plea, there was an established consensus that criminal defense lawyers had a duty to apprise their clients of possible adverse immigration consequences of a plea. In Padilla's case, that was limited to deportation. But for naturalized citizens like Mr. Farhan, deportation is among the consequences once he is denaturalized. And for that reason, competent trial counsel are required to apprise clients whom they know to be naturalized citizens that denaturalization and resultant deportation are among the consequences that follow from a guilty plea. Well, in Padilla, the court said that one of the reasons why there was that duty to inform the client was because deportation automatically or nearly automatically follows from a criminal conviction. Didn't the court say that? Certainly. I mean, the court describes it in various ways. One of the things they talk about is the universe of adverse immigration consequences. Their automatic deportation was triggered by the particular offense for which Mr. Padilla was convicted. But there's certainly a question on which reasonable judges can differ as to whether I understand that. But in this case, just to clarify so that we know what we're talking about, denaturalization requires a separate civil proceeding for the government to bring and another court to approve. It does, Your Honor. And I think that goes to the collateral versus direct consequence. But the reason that the government has brought a denaturalization proceeding here, I mean, first to go to the question in Padilla, in Padilla, the court said that, number one, they never have considered the Supreme Court has never considered the collateral direct distinction for purposes of a strict analysis. And number two, given the uniquely severe nature of deportation, the collateral direct distinction had no place in the analysis. Denaturalization is, if anything, a more severe consequence than deportation. And so if the direct collateral distinction played no role or ought to play no role in the Strickland analysis in Padilla, then at the very least, reasonable judges disagree. So your view that Padilla would have been the same if deportation did not follow automatically from the criminal conviction, if in fact the government needed to bring separate charges and a separate proceeding and a separate court needed to order the deportation? So I think what the court says is that deportation is a distinct consequence of a guilty plea or is a distinct consequence of a criminal conviction. And so what the court said in that case is we're not prepared to apply the direct collateral distinction when you're dealing with deportation. Now this court has applied the distinction in other contexts where the civil consequences of a criminal conviction are more attenuated either by process or they're just less severe, such as civil commitment, which was at issue in Young's. But the court made clear in Padilla that deportation, and so perforce denaturalization, are a particular type of consequence and the collateral direct distinction just doesn't appear there. So you're saying that because of the seriousness of the consequence, we shouldn't pay attention to the direct or collateral distinction. But if we were to, would you agree that this is a collateral consequence? I wouldn't. I mean, the way the government describes collateral consequences is it means... I'm just pulling up the language. I think they talked about it being direct and virtually inevitable. But here, while the government had to take the step of bringing a denaturalization proceeding, there's no discretion for a court to strip a citizen who is subject to a civil denaturalization proceeding of his citizenship once the predicates are established. And here, the government is seeking to establish the factual predicates, federal estoppel, from the fact that there's criminal conviction. So I don't think that the fact that the government needs to initiate a separate proceeding in order to denaturalize a naturalized citizen is dispositive of the direct collateral distinction. The consequences here are serious. They follow directly and inevitably from the conviction. Can I ask you a question about prejudice? So your client was recorded discussing the terrorism finances between December 2001 and March 2002, right? Correct. Well, would it have made a difference? Yeah, so I would dispute that that's exactly what the recordings say, but I take your point and I apologize for interrupting. OK, well, just so just give me a quick answer. What would he have done if he had not pleaded guilty? How would it have made a difference? So I think there are two different ways to answer that question, and I realize my time is up, so I'll be quick. The first is that in cases like Lee, Kovacs, and Rodriguez, the courts have made clear that even if it's a Hail Mary for purposes of defending himself against the charges, if a client places a premium on maintaining his immigration status or his citizenship status, that's dispositive of the prejudice inquiry. And here, as in Lee, Kovacs, and Rodriguez, Mr. Farhan has strong connections to the United States. And there were contemporaneous evidence at his plea and sentencing that he had a singular focus on staying with his family. And so the question whether he would. Thanks very much. Let me do that. Do my colleagues have other questions? If not, we'll hear from. No, I have no questions. OK, we'll hear from the government. Mr. Zhang. Good morning, and may it please the court. Judge Fresca held below that in order to render effective assistance of counsel, a defense attorney who is aware only of the fact that his client is a naturalized US citizen and nothing more, need not provide affirmative advice about civil denaturalization in connection with a guilty plea. The question before the court this morning is whether a reasonable jurist could reach the opposite conclusion. The answer is no. There's no dispute that Mr. Farhan's attorney did not know, as Judge Fresca put it, the circumstances giving rise to Mr. Farhan's denaturalization exposure. Mr. Farhan does not contend that he spoke with his attorney about the naturalization process itself, that they spoke about. Come on. I mean, the you know, the your opposing counsel just said that he was aware that he was a naturalized citizen and if he committed fraud when becoming naturalized, meaning he said that he didn't engage in criminal conduct when he had, I mean, wouldn't anybody realize that that's a basis for denaturalization? Well, your honor, the only fact in the record is that he was aware that the citizenship was obtained through naturalization. And to be clear, Mr. Farhan was already a naturalized citizen by the time the criminal case began and at the time the representation began. So there was no overlap. But what about the criminal conduct, not the case? I mean, the attorney would have known when the conduct occurred, right? That's right. And it's not it's not very much of a leap to think that the agency would ask, have you engaged in any criminal conduct? And you would expect the agency to do that as a precondition to to processing the naturalization papers. And so, you know, I don't think you can say that the attorney was was ignorant of the facts. The facts are pretty well, pretty, pretty there are there, if not directly by by obvious implications. I'm not sure I agree with that, your honor. First of all, I'm not sure that the record would reflect that Mr. Farhan's attorney was advised of when the naturalization process occurred. And just to use a hypothetical, if it were the case that Mr. Farhan were naturalized and completed that process before the criminal conduct occurred, I don't dispute that. Obviously, the attorney was aware when the criminal conduct occurred. But if the naturalization happened before the criminal conduct occurred, then this issue would not arise. The naturalization, the only way it would arise is if the attorney asked a reasonable question, which is when were you naturalized? Yeah, I mean, he knew he was naturalized. And you're saying that the fact that he didn't find out when is determinative here. Well, your honor, respectfully, denaturalization and the inquiry into when a client was naturalized is not a question that the Sixth Amendment requires criminal defense counsel to ask. It is a collateral consequence for the reasons that were discussed before. Denaturalization is a separate civil proceeding at which the government bears the burden of proof. That is broad. What do you have to say to the opposing counsel's argument that the court in Padilla said, well, deportation is such a significant consequence, we're not going to take account of the collateral direct distinction? Well, I would disagree that that is a correct reading of Padilla. The lodestar in Padilla is not the severity or the subjective importance of the consequence to the defendant. It is whether the consequence is, and I'm quoting from Padilla, nearly an automatic result for a broad category of noncitizen offenders that's intimately related to the criminal process. And for deportation of noncitizens, that applies because the deportation statute for noncitizens cares only about, A, whether someone is a noncitizen, is an alien, and B, the fact of the conviction itself. That is the legal fact of conviction. Those two things are not true of denaturalization. It is not a naturalized citizen status as such that subjects them to denaturalization. It is broad within the naturalization process itself. And the basis for denaturalization is not the entry of a criminal conviction. It is either misrepresentation or dishonesty during the naturalization process, or it is... Isn't it always a question in the naturalization process as to whether someone has committed criminal conduct? And so engaging in criminal conduct during the naturalization period is always going to be the basis for denaturalization, isn't it? Well, not necessarily, Your Honor. In the statute and in the regulations, there is a carve-out for extenuating circumstances, and this is cited in the denaturalization complaint. So it's not the case that simply the fact of the conduct is dispositive on the denaturalization question. Separate and apart from that, Your Honor, it is the conduct itself, and this is a distinction also with deportation, it is the conduct itself that is the basis of denaturalization. And so, therefore, the grounds for denaturalization, as to Mr. Farhane, existed before the criminal case was even brought, existed before the representation occurred, and certainly existed before the entry of the guilty plea. Isn't it debatable what the grounds were, the actual reasons for the denaturalization? I mean, you're making an argument, but one could reach an opposite view. That there weren't independent basis, or this was the predominant basis, prior commission of the crime, right? Yes, Your Honor. I think my point is that the legal question that would be before the court in the denaturalization proceeding is whether Mr. Farhane engaged in the conduct. And the evidence of whether or not he engaged in that conduct, and I take Your Honor's point that there could be litigation and factual dispute about that. My point is that that evidence existed before the bringing of the criminal case. And before the entry of the guilty plea. The other issue is whether or not there was a reasonable possibility that he might have lied to the agent when asked about, had you ever committed any prior crimes? And it's part of the denaturalization process. Correct, Your Honor. It's not just the factory commission, it's whether you committed crimes. And it's obvious that he did. So, and therefore, it's not much of a leap to say that he lied when asked the question. Correct, Your Honor. I think the point here is that unlike the deportation context, where the actual entry of the guilty plea is what matters, and but for the guilty plea, deportation would not trigger, the same is not true of denaturalization. That is to say the grounds for denaturalization would exist without a criminal case. The grounds for denaturalization would exist if Mr. Farhane went to trial and were acquitted, or if the government negotiated a different plea. So, unlike the deportation context, this is not a context where advice about the collateral consequence is such that it would reasonably affect a defendant's decision whether or not to plead guilty. By the way, we're looking at this case through the lens of a color, right? Certificate of Appeal. We're not really directly concerned necessarily with the merits here. We don't have to decide the merits. All we have to do is decide that there's a reasonable argument on the other side. That's correct, Your Honor. And that the Certificate of Appeal ought to issue. Well, Your Honor, the government does not believe a Certificate of Appeal, appealability ought to issue because in the approximately decade since Padilla was decided, no court has endorsed the idea that Padilla should be read or understood to extend to the denaturalization context. We decided to the contrary. The Second Circuit hasn't ruled on this precise question, has it? If Your Honor is referring to the Rodriguez case, this court has not ruled on the issue. In Rodriguez, which was a quorum novus decision, the parties had agreed in the litigation below that counsel's performance was defective because that counsel affirmatively misadvised the defendant about denaturalization. That is to say, when that defendant asked, should I be worried about the possibility of denaturalization. I think the question is not what happened in that case. The question is just that the Second Circuit has not said that a lawyer does not have the obligation to advise a naturalized citizen of the possible consequence of denaturalization. You haven't said one way or the other whether that's an obligation. Well, Your Honor, the Second Circuit certainly has not specifically addressed the issue framed in that way. But the government would respectfully submit that given the existing case law on direct versus collateral consequences, which remains the law in the circuit as seen by the Young's decision, and which is abrogated in a narrow and specific way by Padilla as to the deportation of non-citizens, that the law of the circuit is that denaturalization is a collateral consequence as to which the Sixth Amendment does not apply. And so silence as to denaturalization is not the basis of an ineffective assistance claim. Okay. All right. Thank you very much, Mr. Zhang. If there's no more questions from my colleagues, the motion will be submitted. We're going to hear argument next.